UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

TROY MCFARLAND,

                  Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
14-CR-296 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 14, 2015, the defendant, Troy McFarland, pleaded guilty to one count of Narcotics Distribution Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of Firearms Trafficking, in violation of 18 U.S.C. § 922(a)(1)(A). The Court now sentences the defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, the defendant is hereby sentenced to 84 months of incarceration, 3 years of supervised release, and payment of a $200.00 special assessment.

## BACKGROUND

On May 19, 2014, the United States filed an Indictment against Troy McFarland ("Defendant") and three co-defendants, alleging they participated in a conspiracy to distribute heroin within the Eastern District of New York. ECF No. 1. The United States subsequently filed a three-count Superseding Indictment against Defendant and four co-defendants on October 16, 2014. ECF No. 52. The Superseding Indictment charged Defendant with one count of Narcotics Distribution Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(a)(1), one count of Use of a Firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of Firearms Trafficking, in violation of 18 U.S.C. § 922(a)(1)(A). *Id.* at 1-2. Defendant pleaded guilty to the first and third counts of the Superseding Indictment on August 14, 2015. ECF No. 97.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on October 17, 1970, in Brooklyn, New York, where he lived with his mother until he was five years old. *See* Presentence Investigation Report ("PSR") ¶¶ 75, 77, ECF No. 167. At that time, he moved to Portsmouth, Virginia, to live with and help care for his maternal grandmother, who was suffering from breast cancer and became "like a mother" to him. *Id.* ¶ 77. Defendant describes his grandmother as being the only adult role model he had

growing up. *Id.* ¶ 79. Defendant's grandmother passed away in 1980 when he was ten years old, Add. to PSR at 2, ECF No. 176, and Defendant returned to live with his mother, his maternal half-brother, and his uncle (who is only two years older than Defendant) in Brooklyn, PSR ¶ 77. Because Defendant's mother attended school and worked much of the time—including double shifts on weekends—Defendant, his brother, and his uncle were frequently unsupervised. *Id.*

Defendant was first introduced to drugs by an older cousin when he was eleven, after which he began to use marijuana heavily and cocaine occasionally. *Id.* ¶¶ 79, 100-01. He began using heroin at the age of fifteen and continued to use it almost daily throughout much of his adult life. *Id.* ¶ 102. Around the same time, he was "caught in a raid and arrested," after which his mother sent him to Miami, Florida, to live with his father, whom he had met for the first time three years earlier. *Id.* ¶¶ 78-79. Defendant and his father had difficulty getting along due, in part, to their long period of estrangement, and so Defendant returned to live with his mother after one year. *Id.* Defendant only had "sporadic contact" with his father thereafter, and his father did not support him financially. *Id.* ¶ 78.

Defendant attended high school through the tenth grade, *id.* ¶ 106, and later earned his GED in 1991, *id.* ¶ 105. Since leaving school in approximately 1986, Defendant worked various jobs, including as a restaurant dishwasher, a painter for a contracting business, a custodian and painter at various shipyards in Virginia, and as a barber. *Id.* ¶ 109-10. Defendant admits, though, that he sold drugs during periods of unemployment to support himself and his drug habit. *Id.* ¶ 110. He says he learned to deal drugs at a young age from members of his family. *Id.* ¶ 99.

Indeed, Defendant has a lengthy criminal history dating back to when he was nineteen. *See id.* ¶¶ 41-62. His adult criminal convictions include several for reckless driving and/or driving with a suspended license, *id.* ¶¶ 42, 45-46, 51, 53, 55-56, 58-61, multiple instances of

possession of controlled substances, *id.* ¶¶ 41, 44, 50, 54, 62, and one for misdemeanor assault, *id.* ¶¶ 43. As a result, Defendant has served several periods of incarceration, *see id.* ¶¶ 58-62, during which he underwent detoxification and received some substance abuse treatment, *id.* ¶ 102. Defendant acknowledges his continued need for drug treatment. *Id.* ¶ 104.

Defendant has been married twice and reports that his marriages fell apart due to his own behavior, particularly his infidelity, involvement with drugs, and general "inability to be a proper husband." *Id.* ¶¶ 85, 87, 99. One of his former wives also reported that Defendant's status as a habitual traffic offender and periods of incarceration strained their marriage. *Id.* ¶ 88. Defendant has six children from these and two other prior relationships. *Id.* ¶¶ 81-87. Despite his legal and marital troubles, Defendant remains close with all of his children and provides for them financially when he is able. His eldest daughter describes Defendant as a "good, loving, caring person." *Id.* ¶ 82. His second oldest daughter said Defendant is a "very caring person" who "wants to make sure he's involved in [his children's] lives." *Id.* ¶ 84.

The instant offenses arise out of Defendant's participation in a heroin and firearms trafficking organization that was investigated by a task force consisting of the New York City Police Department, the Organized Crime and Drug Enforcement Strike Force, and the Federal Bureau of Investigation beginning in approximately November 2013. *Id.* ¶ 2. With the assistance of a cooperating witness, government agents observed a series of narcotics transactions between the cooperating witness and a co-defendant, Efrain Irizarry, and subsequently executed a wiretap on Irrizary's phone. *Id.* ¶¶ 3-6. In or about 2013, Defendant and an acquaintance, co-defendant Roy Smith, were introduced to Irizarry through relatives. *Id.* ¶ 16. Between November 1, 2013, and March 27, 2014, Defendant traveled from Virginia to New York on three occasions—once with Smith—during which he purchased a total of

4

approximately 100 grams of heroin from Irizarry and sold five guns he had brought from Virginia, some of the proceeds of which were used to buy heroin. *Id.* ¶¶ 16-17. In March 2014, Defendant was arrested in New York for possession of a controlled substance, for which he was sentenced to one year in state custody. *Id.* ¶ 62. He was subsequently transferred to federal custody on June 18, 2014, in connection with the instant offense. *Id.* ¶ 17.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law by perpetuating the trade in drugs and firearms and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court also takes into account the extent and nature of Defendant's criminal history, his struggle with addiction, and his expressions of remorse and desire for substance abuse treatment.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Narcotics Distribution Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of Firearms Trafficking, in violation of 18 U.S.C. § 922(a)(1)(A). With regard to the first count, Narcotics Distribution Conspiracy,

Defendant faces a minimum term of imprisonment of five years and a maximum term of imprisonment of forty years, *see* 21 U.S.C. § 841(b)(1)(B)(i), although the Court may find that the mandatory minimum does not apply. If a term of imprisonment is imposed, the Court must also impose a term of supervised release of at least four years, *id.*, although the Court may again find that the mandatory minimum does not apply. Defendant is ineligible for probation. *Id.* Defendant also faces a maximum fine of $5,000,000.00, *id.*, and payment of a mandatory special assessment of $100.00, 18 U.S.C. § 3013. With regard to the third count, Firearms Trafficking, Defendant faces a maximum term of imprisonment of five years, *see* 18 U.S.C. § 924(a)(1)(D), a term of supervised release of up to three years to run concurrently with any term of supervised release imposed for count one, *id.* § 3583(b)(2), a maximum fine of $250,000.00, *id.* § 3571(b), and payment of a mandatory special assessment of $100.00, *id.* § 3013. Defendant is also ineligible for probation for this count. *Id.* § 3561(a)(3).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Pursuant to Application Note 5 of Guidelines § 3D1.2(c), counts one and three are grouped for the purpose of the Guidelines calculation, as the offenses charged are closely related and based, in part, on the same underlying conduct. *See* United States Sentencing Commission, *Guidelines Manual*, § 3D1.2(c) & cmt. n.5 (Nov. 2016) ("USSG" or "Guidelines"). As a result, Guidelines § 2D1.1(a)(5), which applies to violations of 21 U.S.C. § 846, sets a base offense level of twenty-four for the grouped counts, per Guidelines § 2D1.1(c)(8). *Id.* §§ 2D1.1(a)(5), (c)(8). Because Defendant possessed weapons in furtherance of drug distribution, two levels are

added. *Id.* § 2D1.1(b)(1). Defendant's acceptance of responsibility by pleading guilty and his timely notification of his intent to do so permits a further reduction of three levels. *Id.* § 3E1.1. Accordingly, Defendant's total adjusted offense level is twenty-three. Based on his prior convictions, Defendant has a criminal history score of sixteen, which results in a criminal history category of six. PSR ¶ 63; Add. to PSR at 2.

Given a total offense level of twenty-three and a criminal history category of six, the Guidelines suggest a term of imprisonment of between ninety-two and one hundred fifteen months. USSG ch. 5, pt. A. The Guidelines further recommend a term of supervised release of at least four years for count one and of between one year and three years for count three, *id.* §§ 5D1.1(a), 5D1.2(a)(2), (c); a fine of between $20,000.00 and $5,000,000.00, *id.* § 5E1.2(c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation. *Id.* § 5B1.1(b)(2), (3).

### E. Pertinent Policy Statement of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Per the Policy Statement to Guidelines § 4A1.3, the Court may consider departing from the Guidelines "where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history." Here, most of Defendant's criminal history points are associated with non-violent and motor vehicle offenses. PSR ¶ 131. If these were not included in the calculation of Defendant's criminal history score, his criminal history category would be two and the Guidelines sentencing range would be reduced to fifty-one to sixty-three months. *See id.*; *see also* USSG ch. 5, pt. A.[1] Therefore, if the

---

[1] Probation's calculation of the applicable Guidelines range in this circumstance was incorrect. *Cf.* PSR ¶ 131. When Defendant's related conduct, *see* Add. to PSR at 2, and motor vehicle offenses are not included, Defendant's

7

Court were to adopt the position advocated by Defendant's counsel, the Guidelines sentencing range for count one would be fifty-one to sixty-three months and the sentence of sixty months for count one would be within the applicable Guidelines sentencing range.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 84 months of incarceration, 3 years of supervised release, and payment of the $200.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court requests that the Bureau of Prisons place Defendant in a facility close to Virginia, where his family resides.

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addendum thereto and imposes the special conditions of release proposed by the Probation Department.

---

criminal history score is three, which results in a criminal history category of two and a Guidelines sentencing range of fifty-one to sixty-three months. USSG ch. 5, pt. A.

**SO ORDERED.**

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 28, 2017
      Brooklyn, New York