```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,               :
                                        :
            v.                          :       MEMORANDUM & ORDER
                                        :       14-CR-296 (WFK)
TROY MCFARLAND,                         :
                                        :
                  Defendant.            :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 14, 2015, Troy McFarland ("Defendant"), pled guilty to one count of Narcotics Distribution Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of Firearms Trafficking, in violation of 18 U.S.C. § 922(a)(1)(A). On November 28, 2017, the Court sentenced the defendant to 84 months of incarceration, 3 years of supervised release, and payment of a $200.00 special assessment. Court now re-sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served, 3 years of supervised release, and payment of a total of $200.00 special assessment.

## BACKGROUND

On May 19, 2014, the United States filed an Indictment against Troy McFarland ("Defendant") and three co-defendants, alleging they participated in a conspiracy to distribute heroin within the Eastern District of New York. ECF No. 1. The United States subsequently filed a three-count Superseding Indictment against Defendant and four co-defendants on October 16, 2014. *See* Superseding Indictment, ECF No. 52. The Superseding Indictment charged Defendant with: (1) one count of Narcotics Distribution Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(a)(1); (2) one count of Use of a Firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) one count of Firearms Trafficking, in violation of 18 U.S.C. § 922(a)(1)(A). *Id.* at 1-2. Defendant pled guilty before this Court to the first and third counts of the Superseding Indictment on August 14, 2015. ECF No. 97.

The Court previously sentenced Defendant on November 28, 2017. *See* Memorandum and Order at 1, ECF No. 183. On January 31, 2017, the United States Court of Appeals for the Second Circuit issued a summary order vacating Defendant's sentence and remanding the case for resentencing. *See* Order, ECF No. 192.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the United States Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

2

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on October 17, 1970, in Brooklyn, New York, where he lived with his mother until he was five years old. *See* Presentence Investigation Report ("PSR") ¶¶ 75, 77, ECF No. 167. At that time, he moved to Portsmouth, Virginia, to live with and help care for his maternal grandmother, who was suffering from breast cancer and became "like a mother" to him. *Id.* ¶ 77. Defendant describes his grandmother as being the only adult role model he had growing up. *Id.* ¶ 79. Defendant's grandmother passed away in 1980 when he was ten years old, *see* Add. to PSR at 2, ECF No. 176, and Defendant returned to live with his mother, his maternal half-brother, and his uncle (who is only two years older than Defendant) in Brooklyn, PSR ¶ 77. Because Defendant's mother attended school and worked much of the time—including double shifts on weekends—Defendant, his brother, and his uncle were frequently unsupervised. *Id.*

Defendant was first introduced to drugs by an older cousin when he was eleven, after which he began to use marijuana heavily and cocaine occasionally. *Id.* ¶¶ 79, 100-01. He began using heroin at the age of fifteen and continued to use it almost daily throughout much of his adult life. *Id.* ¶ 102. Around the same time, he was "caught in a raid and arrested," after which his mother sent him to Miami, Florida, to live with his father, whom he had met for the first time three years earlier. *Id.* ¶¶ 78-79. Defendant and his father had difficulty getting along due, in part, to their long period of estrangement, and so Defendant returned to live with his mother after one year. *Id.* Defendant had only "sporadic contact" with his father thereafter, and his father did not support him financially. *Id.* ¶ 78.

3

Defendant attended high school through the tenth grade, *id.* ¶ 106, and later earned his GED in 1991, *id.* ¶ 105. Since leaving school in approximately 1986, Defendant worked various jobs, including as a restaurant dishwasher, a painter for a contracting business, a custodian and painter at various shipyards in Virginia, and as a barber. *Id.* ¶ 109-10. Defendant admits he sold drugs during periods of unemployment to support himself and his drug habit. *Id.* ¶ 110. He reported he learned to deal drugs at a young age from members of his family. *Id.* ¶ 99.

Indeed, Defendant has a lengthy criminal history dating back to when he was nineteen. *See id.* ¶¶ 41-62. His adult criminal convictions include several convictions for reckless driving and/or driving with a suspended license, *id.* ¶¶ 42, 45-46, 51, 53, 55-56, 58-61, multiple convictions of possession of controlled substances, *id.* ¶¶ 41, 44, 50, 54, 62, and one conviction for misdemeanor assault, *id.* ¶¶ 43. As a result, Defendant has served several periods of incarceration, *see id.* ¶¶ 58-62, during which he underwent detoxification and received some substance abuse treatment, *id.* ¶ 102. Defendant acknowledges his continued need for drug treatment. *Id.* ¶ 104.

Defendant has been married twice and reports his marriages fell apart due to his own behavior, particularly his infidelity, involvement with drugs, and general "inability to be a proper husband." *Id.* ¶¶ 85, 87, 99. One of his former wives also reported his habitual traffic offenses and periods of incarceration strained their marriage. *Id.* ¶ 88. Defendant has six children from these and two other prior relationships. *Id.* ¶¶ 81-87. Despite his legal and marital troubles, Defendant remains close with all of his children and provides for them financially when he is able. His eldest daughter describes Defendant as a "good, loving, caring person." *Id.* ¶ 82. His second oldest daughter said Defendant is a "very caring person" who "wants to make sure he's involved in [his children's] lives." *Id.* ¶ 84.

The instant offenses arose out of Defendant's participation in a heroin and firearms trafficking organization that was investigated by a task force consisting of the New York City Police Department, the Organized Crime and Drug Enforcement Strike Force, and the Federal Bureau of Investigation beginning in approximately November 2013. *Id.* ¶ 2. With the assistance of a cooperating witness, government agents observed a series of narcotics transactions between the cooperating witness and a co-defendant, Efrain Irizarry, and subsequently executed a wiretap on Irrizary's phone. *Id.* ¶¶ 3-6. In or about 2013, relatives introduced Defendant and an acquaintance, co-defendant Roy Smith, to Irizarry. *Id.* ¶ 16. Between November 1, 2013, and March 27, 2014, Defendant traveled from Virginia to New York on three occasions—once with Smith—during which he purchased a total of approximately 100 grams of heroin from Irizarry and sold five guns he had brought from Virginia, some of the proceeds of which were used to buy heroin. *Id.* ¶¶ 16-17. In March 2014, Defendant was arrested in New York for possession of a controlled substance, for which he was sentenced to one year in state custody. *Id.* ¶ 62. He was subsequently transferred to federal custody on June 18, 2014, in connection with the instant offense. *Id.* ¶ 17.

Defendant was designated to FCI Fairton, New Jersey, on December 19, 2017. Second Addendum to the Presentence Investigation Report ("Second PSR Addendum") at 2, ECF No. 1927. Probation reported Defendant has enrolled in several educational courses, including Anger Management, Card Making, Finance Pre-Trial, Parenting Inside Out Dad, SHU Health, Parenting Adult Role Model and CDL Basics ACE. *Id.* Defendant is also a participant in the Non-residential Drug Treatment program. *Id.* Defendant has had one disciplinary incident while serving his custodial sentence for the instant offense: on January 7, 2015, he received an incident report for Giving or Accepting Money without Authorization and was sanctioned for 90 days

loss of telephone privileges. *Id.* According to Defendant, "I let him use it because he's helping me with my legal work." *Id.* Defendant also works as a unit orderly. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law by perpetuating the trade in drugs and firearms, and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court also considers the extent and nature of Defendant's criminal history, his struggle with addiction, his expressions of remorse, and his efforts to rehabilitate.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Narcotics Distribution Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of Firearms Trafficking, in violation of 18 U.S.C. § 922(a)(1)(A). With respect to the first count, Narcotics Distribution Conspiracy, Defendant faces a minimum term of imprisonment of five years and a maximum term of imprisonment of forty years, *see* 21 U.S.C. § 841(b)(1)(B)(i), although the Court may find the mandatory minimum does not apply. He also faces a minimum term of supervised release of four years, *id.*,

6

although again, the Court may find the mandatory minimum does not apply. Defendant is ineligible for probation. *Id.* Defendant also faces a maximum fine of $5,000,000.00, *id.*, and payment of a mandatory special assessment of $100.00, 18 U.S.C. § 3013.

With respect to the third count, Firearms Trafficking, Defendant faces a maximum term of imprisonment of five years, *see* 18 U.S.C. § 924(a)(1)(D), a term of supervised release of up to three years to run concurrently with any term of supervised release imposed for Count One, *id.* § 3583(b)(2), a maximum fine of $250,000.00, *id.* § 3571(b), and payment of a mandatory special assessment of $100.00, *id.* § 3013. Defendant is also ineligible for probation for this count. *Id.* § 3561(a)(3).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Pursuant to Application Note 5 of Guidelines § 3D1.2(c), counts one and three are grouped for the purposes of the Guidelines calculation, as the offenses charged are closely related and based, in part, on the same underlying conduct. *See* United States Sentencing Commission, *Guidelines Manual*, § 3D1.2(c) & cmt. n.5 (Nov. 2016) ("USSG" or "Guidelines"). As a result, Guidelines § 2D1.1(a)(5), which applies to violations of 21 U.S.C. § 846, sets a base offense level of twenty-four for the grouped counts, per Guidelines § 2D1.1(c)(8). *Id.* §§ 2D1.1(a)(5), (c)(8). Defendant's possession of weapons in furtherance of drug distribution adds another two levels. *Id.* § 2D1.1(b)(1). Defendant's acceptance of responsibility by pleading guilty and his timely notification of his intent to do so permits a reduction of three levels. *Id.* § 3E1.1. Accordingly, Defendant's total adjusted offense level is twenty-three, to which all parties

agree. *See* Def. Sentencing Mem. ("Def. Resentencing Mem.") at 1, ECF No. 199; Gov't Sentencing Mem. (Gov't Resentencing Mem.") at 1-2, ECF No. 202; Second PSR Addendum ¶ 131.

Defendant's past criminal convictions yield a criminal history score of sixteen, establishing a criminal history category of six. USSG Ch. 5, Part A; *see also* Second PSR Addendum ¶ 63.

Given a total offense level of twenty-three and a criminal history category of six, the Guidelines recommend a term of imprisonment of ninety-two to one-hundred-fifteen months. USSG ch. 5, pt. A. Under the Guidelines, the Court may also sentence Defendant to a term of supervised release of at least four years for Count One and of between one year and three years for Count Three, *id.* §§ 5D1.1(a), 5D1.2(a)(2), (c), and may impose a fine of between $20,000.00 and $5,000,000.00, *id.* § 5E1.2(c)(4), (h)(1), in addition to payment of the costs of prosecution, *id.* § 5E1.5. Defendant is ineligible for probation. *Id.* § 5B1.1(b)(2), (3).

### E. Pertinent Policy Statement of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

All parties recommend a below-Guidelines sentence pursuant to Section 4A1.3(b)(1) because the Guidelines calculation of his criminal history category overstates his criminal history. *See* Second PSR Addendum ¶ 131; Def. Resentencing Mem. at 1; Gov't. Resentencing Mem. at 2. The parties also recommend a below-Guidelines sentence pursuant to Policy Statement § 5G1.3 to credit Defendant for time served for another offense considered relevant to the instant offense. The Court addresses each policy in turn.

1. Guideline § 4A1.3(b)(1)

8

Under Policy Statement § 4A1.3(b), a court may depart from the Guidelines "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3. The Second Circuit refers to this practice as a "horizontal departure" because the district court moves horizontally across the Sentencing Table to depart from a given sentencing range. *United States v. Mishoe*, 241 F.3d 214, 217 (2d Cir. 2001). Horizontal departures under Guideline § 4A1.3(b) are based only on "individualized consideration of the circumstances of a defendant's case." *United States v. Ingram*, 721 F.3d 35, 39 (2d Cir. 2013) (Calabresi, J., concurring) (quoting *Mishoe*, 241 F.3d at 218). When a district court departs from the applicable criminal history category, the court must state in writing "the specific reasons why the applicable criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3(c)(2).

All parties agree the Court should impose a horizontal departure of Defendant's criminal history category pursuant to Policy Statement § 4A1.3(b). Probation, defense counsel, and the Government note a criminal history category of VI appears to "over-represent the seriousness of the defendant's prior convictions" because most of his convictions were non-violent and were for motor vehicle offenses. Second PSR Addendum ¶ 131; *accord* Def. Resentencing Mem. at 1; Gov't. Resentencing Mem. at 2. Probation also notes his previous convictions for assault and drug offenses did not receive criminal history points because they were outside the applicable time frames for the assignment of criminal history points. *Id.* If the Court were to exclude these convictions in its calculation of Defendant's criminal history score, his criminal history category

9

would be two, and the Guidelines sentencing range would be fifty-one to sixty-three months. *See id.*; *see also* USSG ch. 5, pt. A. Defense counsel and Probation explicitly request the Court find Defendant's criminal history to be category two. The Government makes no such recommendation but does not object.

The Court concludes a downward departure is warranted because Criminal History Category VI represents an overrepresentation of the seriousness of Defendant's criminal history. As noted above, many of Defendant's convictions were non-violent and were for motor vehicle offenses. Accordingly, the Court expressly removes those convictions from its consideration and expressly adopts a downward departure to criminal history category two, which, with an offense level of twenty-three, results in a Guidelines range of fifty-one to sixty-three months.

2. Guideline § 5G1.3(d)

All parties recommend a downward departure pursuant to Policy Statement § 5G1.3(d), which provides:

> In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

USSG § 5G1.3(d); *see* Second PSR Addendum ¶ 131; Def. Resentencing Mem. at 2; *see also* Gov't. Resentencing Mem. at 2 (noting "[t]he Court may depart downward for any period of imprisonment already served for conduct considered relevant conduct to the instant offense" and that "such an adjustment is appropriate in this case").

Defense counsel notes on March 27, 2014, Defendant was arrested on his New York state case for conduct considered "relevant" to the instant matter and was sentenced to serve one-year imprisonment—time for which he will not receive credit by the Bureau of Prisons in the instant case pursuant to 18 U.S.C. § 3585(b). Def. Resentencing Mem.

10

at 2 n.2 (citing PSR ¶ 62). Because Defendant has served a term of imprisonment for another offense that is considered relevant conduct to the instant offense, the Court may provide an adjustment to credit Defendant for his time served on the related offense. *See* Second PSR Addendum ¶ 131; Def. Resentencing Mem. at 2; Gov't Resentencing Mem. at 2.

This Court concludes a downward departure is warranted under § 5G1.3(d).

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this memorandum and order, and in consideration of the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case.

### CONCLUSION

At the direction of the Second Circuit, the Court now determines and expressly finds the Criminal History Category in this case is II, the applicable guidelines range in this case is fifty-one to sixty-three months, and Defendant is entitled to downwards departures under Guideline §§ 4A1.3(b)(1) and 5G1.3(d). Because the defendant provided substantial assistance to the Government, the Court grants the Government's § 5K1.1 motion and finds the mandatory minimums do not apply to Defendant.

The Court now sentences McFarland to time served, 3 years of supervised release, and payment of $100.00 of the remaining $200.00 mandatory assessment. This sentence is appropriate and comports with the dictates of § 3553. The Court also imposes concurrent sentences. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court requests that the Bureau of Prisons place Defendant in a facility close to Virginia, where his family resides.

The Court expressly adopts the factual findings of the Presentence Investigation Report, all addendums thereto, barring any errors contained therein, and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 8, 2019
       Brooklyn, New York

12